WOODYARD PUBLICATIONS, INC., *et al. v.* RAY LAMBERT,
*Sheriff, et al.*

(No. 7076)

Submitted Jan. 13 1932.   Decided March 22, 1932.

*Poffenbarger & Poffenbarger, A. N. Breckenridge,* and
*Steptoe & Johnson,* for relators.

*Emmett Horan,* and *Hubbard & Bacon,* for respondents.

*Wm. E. Chilton, A. G. Fox, H. L. Ducker,* and *Price, Smith
& Spilman* and *J. M. Woods,* for Daily Gazette Co. and
others, as *amici curiae.*

LITZ, JUDGE:

The petitioners, Woodyard Publications, Inc., owner and
publisher of the Nicholas Republican (a Republican weekly

newspaper published in Nicholas County) and a taxpayer of said county, and Ruskin K. Wiseman, owner and publisher of the Nicholas Chronicle (a Democratic weekly newspaper published in said county) and a citizen and taxpayer of said county, seek a writ of mandamus directed to Ray Lambert, as sheriff of said county, the county court thereof and Arnold McCue, C. C. Coe and W. D. Halstead, members of said court, commanding said Ray Lambert, as such sheriff, to furnish to and authorize the publication by petitioners copies of the lists of delinquent and improperly assessed lands and delinquent personal property in Nicholas County for the year 1930, as provided by chapter 11, article 9, section 22 of the Code, and commanding the said county court and the members thereof to cause to be published in each of said newspapers the financial statement of said county for the fiscal year ending June 30, 1931, in accordance with chapter 7, article 5, section 16 of the Code, and pay for such publication according to the rates provided in chapter 59, article 1, section 34 of said Code, and further commanding said court and its members to direct the said sheriff to deliver to petitioners for publication copies of said delinquent lists and to provide for payment thereof.

Chapter 7, article 5, section 16 of the Code requires the county court of every county, under the penalty of a fine, to cause to be published within four weeks after its first session of each fiscal year in at least two newspapers of opposite politics, if there be such in the county, an itemized account of the receipts and expenditures of the county during the previous fiscal year. This provision is mandatory. *State ex rel. Bailey* v. *County Court*, 109 W. Va. 31, 152 S. E. 784. The non-performance of this duty cannot be defended on the ground that the county court is without available funds to pay the costs of publication. It may levy taxes, if necessary, for that purpose. Nor will the performance of the duty, requiring the expenditure of money, violate chapter 11, article 8, section 13, Code 1931, which prohibits the county court from expending money or incurring indebtedness it is not "expressly" authorized by law to expend or incur.

Chapter 11, article 9, section 20, requires the sheriff, after ascertaining the taxes assessed in his county that cannot be collected, to prepare, on or before the first Monday in June next succeeding the year for which such taxes were assessed, (1) a list of property 'in the land book improperly placed thereon, or not ascertainable; (2) a list of other real estate which is delinquent for the non-payment of taxes thereon; and (3) a list of delinquent taxes so assessed on other than real estate. Section 22 provides: "A copy of each of such lists shall be posted at the front door of the courthouse of the county, at least two weeks before the session of the county court at which they are presented for examination. And a copy of each of such lists shall at the same time be printed for one time in two newspapers of opposite politics, if such there be in the county: provided, that in such publication the aggregate amount of the tax only and not each division thereof need be published. Thereafter, the sheriff shall proceed to collect such delinquent taxes." Prior to 1925, the statute required publication only of the list of delinquent persons and personal property, and directed the cost thereof to be paid out of the county treasury. Chapter 59, Acts 1925, amended the statute by requiring publication of all three lists and the costs thereof to be paid out of the county treasury.

It will thus be observed that although the present code provides for the publication of the three several lists it omits the provision in the previous law requiring the cost of publication to be paid out of the county treasury. In view of this change by the legislature, we cannot hold that the statute in its present form is mandatory requiring publication of said lists at the expense of the county.

Chapter 11, article 10, section 4 of the code requiring the publication of the notice of sale of delinquent lands, provides that the cost of publishing such notice shall be equally distributed among the several tracts or lots of land therein named; that the amount to be apportioned to each tract or lot shall be added to the sum for which such tract or lot is sold; and that the same shall be paid from the proceeds thereof by the sheriff or collector making the sale, except that,

when any tract sold at such sale is purchased by the State, the sum due for such publication shall be paid out of the school fund in the treasury of the State upon the certification of the auditor of the amount so due. The legislature, by thus providing for the costs of publishing of the delinquent sales list, has rendered such publication mandatory.

Counsel for petitioners contend not only that chapter 11, article 9, section 22 of the present Code, standing alone, would justify this court in awarding a writ to compel the county court to direct and pay for the publication of the delinquent lists, but also rely thereon especially when considered with chapter 59, article 1, section 34, as warranting such action. This section merely fixes the rate of charges for publication "required to be made by law or by the order of a court in any cause or proceeding therein or by any provision of a deed of trust or where the publication is made pursuant to law"; and provides that (1) all advertisements required to be made by the State of West Virginia, or any county, district, school district, city, town or village, or any political subdivision thereof or levying body, shall be published in a daily, tri-weekly, semi-weekly, or weekly newspaper or newspapers, as the case may be, of general circulation in the county wherein the publication is to be made, etc., and (2) that any citizen, taxpayer, or the owner or publisher of any newspaper entitled by law to have any publication made in his newspaper, which any county court or tribunal created in lieu thereof, board of education, council of a municipal corporation, or public officer, shall fail or refuse to make, may have a writ of mandamus to compel the making of such publication, if the newspaper is willing to accept the price prescribed therefor by law. We do not think that a proper interpretation of this section in anywise fixes liability upon the county to pay for the publication of the delinquent lists. As the petitioner or relator in mandamus is required to show a clear legal right to the remedy, such case, in our opinion, has not been made by the petitioners as to that part of the relief sought requiring the county court to authorize and pay for the publication of the delinquent lists; but a writ will go requiring the county court and the members thereof

to cause to be published and pay the costs of publication of the county financial statement.

*Writ awarded in part.*

UPON REHEARING:

It is argued on behalf of petitioners that the legislature inadvertently omitted the provision, requiring the cost of publishing the delinquent lists to be paid out of the county treasury; and that this court, in construing the statute, should read into it by implication the omitted provision, in order to give the act legal effect. Many authorities are cited for the cardinal rule of construction, requiring the courts, in the interpretation of statutes, to ascertain and effectuate the intention of the legislature, even to the extent of supplying parts inadvertently omitted. But the rule is unavailing in this case, because chapter 11, article 8, section 13, Code 1931, as already indicated, makes it unlawful for a county court to expend money or incur any indebtedness which it is not *"expressly"* authorized by law to expend or incur. The authority contended for cannot, therefore, be implied. *State* v. *County Court of Lewis County,* 110 W. Va. 533, 158 S. E. 790; *Norris* v. *County Court of Cabell County,* 163 S. E. 418, decided at this term.

Petitioners point to numerous statutes requiring performance of official acts which do not specifically authorize payment of expenses necessarily incurred. It will be observed upon examination, however, that in most, if not all, of such instances where performance of the act is not required of a tax levying body there is statutory provision elsewhere for the necessary cost. Moreover, the failure of the legislature to provide for payment of costs incurred by officials in other instances is not authority for this court to set aside a positive statute of long standing.

Finally, it is suggested that the county court should be required to pay the bill upon the theory that the sheriff is its executive officer. As the duties and authority of the sheriff are, in our opinion, separate and distinct from those of the county court, this position also is without merit.