STATE OF WEST VIRGINIA

*v.*

GEARLS R. GARNER

(No. 9793)

Submitted April 9, 1946.    Decided April 30, 1946.

*T. C. Townsend, I. H. White, M. E. Boiarsky, John T. Keenan* and *J. V. Brennan,* for plaintiff in error.

LOVINS, JUDGE:

Gearls R. Garner was convicted in the Circuit Court of Greenbrier County of entering an election room in violation of Code, 3-7-12, and sentenced to confinement in the county jail for a term of thirty days. He brings the case to this Court by writ of error.

The primary election, held on May 9, 1944, in precinct No. 59, Meadow Bluff District, Greenbrier County, West Virginia, was conducted in two rooms of a school building, one of which abuts on the street and the other on the alley. The room abutting on the alley is entered by means of a door in the partition between the two rooms, and each room is equipped with windows opening on the street and alley. The front room was used for the purpose of receiving the ballots and the other room for counting ballots and tabulating results.

On the day of the election defendant was in the election room three times. On the first occasion he went to the voting place before the polls opened and assisted in preparing the voting booths and the rooms for holding the election. All persons who were to serve as election officers having arrived at the place of voting, a question arose relative to the eligibility of one of the persons to act as an election officer. Defendant took part in the discussion, but after it ended and before the polls opened, left the place where the election was to be held.

In the early afternoon he returned to cast his ballot and remained from three to ten minutes. One of the election officers testified that during the time defendant was there on the second occasion, he entered the rear room, in which one or more election officers were engaged in performing their duties, but upon request he went out of the room. Defendant denies entering the rear room

on the second occasion, but admits he may have stopped at the door in the partition to inquire of the election officers if they desired him to procure their noonday meal.

On the third occasion defendant went into the room where the election was held between nine-thirty and ten o'clock on the night of the election, after all ballots had been cast, counted, and results tabulated, the election officers being then engaged in transcribing results to the official certificates. One of the witnesses for the State, as well as defendant, testified that on the occasion of his third visit, defendant entered the front room with two persons, one of whom was a constable and the other Chairman of the Republican County Executive Committee of Greenbrier County, and that defendant remained in the room about ten minutes. Defendant testified that the purpose of his last visit to the election room was to ascertain the results of the election so that he could transmit such information by telephone to the County Clerk of Greenbrier County, but, upon being requested to leave by a deputy sheriff, he departed without receiving the desired information. The deputy sheriff, who requested defendant to leave the voting room, testified that he noted defendant's presence in the room; that defendant was standing near a desk at which the election officers were seated, and apparently engaged in conversation with them; but the deputy sheriff did not know what the defendant was discussing with such officers. One of the State's witnesses testified that on the the occasion of the third visit, defendant entered the counting room and assisted in moving a table to a position where the light was more satisfactory. Other witnesses testified that defendant sat on a bench at the entrance to the front room and did not enter the rear room.

It is admitted that defendant was not requested to enter the room on any occasion by any election official. No evidence was introduced by the State from which it may be inferred that defendant engaged in any improper or unlawful activities during any of his visits to the voting

room, nor is there any proof of his intent to do an unlawful errand and effectuate an improper purpose.

Defendant moved the court to set aside the verdict and grant him a new trial and in arrest of judgment. These motions were overruled, to which rulings due exceptions were taken. Defendant assigns as error the action of the court in giving an instruction tendered by the State over his objection; in refusing to give five instructions tendered by him; in modifying another instruction tendered by him over his objection; in overruling a motion to set aside the verdict; and in overruling the motion in arrest of judgment. For reasons hereinafter set forth it is unnecessary to discuss any of the foregoing assignments of error except that relating to the motion in arrest of judgment.

The offense here charged is based entirely on statute, the original statute defining the offense being Section 81, Chapter 89, Acts of the Legislature, 1891, which prohibited the entry or attempted entry of any unauthorized person into an election ward contrary to the provisions of that section, and upon conviction provided that such person should be fined not less than one hundred nor more than five hundred dollars and confined in the county jail not less than thirty days. The statute as originally enacted, except that the word "ward" was changed to "room", was designated as Section 81, Chapter 3 of the Code of 1923. The statute upon which the indictment herein is based reads as follows:

"If any person, not herein authorized so to do, shall enter or attempt to enter the election room, except upon a lawful errand and for a proper purpose, or shall remain within sixty feet of the polling place, contrary to the provisions of this chapter, he shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not more than five hundred dollars, or confined in the county jail for not more than thirty days."

Code, 3-7-12. In the Code revision of 1931, the following words were added: "except upon a lawful errand

and for a proper purpose", and the penal provision of the statute provided fine or imprisonment in the alternative rather than a fine and imprisonment as provided in the original enactment.

Under Section 81, Acts of 1891, the entry of any unauthorized person into an election ward, regardless of his purpose, constituted an offense. Under the statute here considered the offense was so described as to permit entry by a person on a lawful errand and for a proper purpose.

The constitutionality of the present statute is challenged upon the ground that the provisions thereof do not describe the offense therein denounced so as to furnish a criterion or standard by which it may be determined whether a crime has been committed. It is argued that unless the statute is aided by other statutes relating to election offenses and acts forbidden under the provisions of Chapter 3 of the Code, the description of the offense is so generic that no offense is created thereby, and that a court or jury could create the offense. This position is arguable under the rule announced in *State v. Lantz*, 90 W. Va. 738, 111 S. E. 766, and *United States v. L. Cohen Grocery Co.*, 255 U. S. 81, 41 S. Ct. 298, 65 L.ed. 516.

Early in the history of this Court, it was held that: "A court will not pass upon the constitutionality of a statute, unless a decision upon that very point is necessary to the determination of the case." *Edgell v. Conaway*, 24 W. Va. 747. The same principle is restated in *Norris v. County Court*, 111 W. Va. 692, 163 S. E. 418, in the following language: "The decision of a question involving the constitutionality of an act is one of the gravest and most delicate of the judicial functions, and while the Court will meet the question with firmness where its decision is indispensable, it is the part of wisdom, and a just respect for the legislature renders it proper, to waive it if the case in which it arises 'can be decided on other points."

For a discussion of the rule stated in the *Norris* and *Edgell* cases, see 1 Cooley's Constitutional Limitations, 8th ed., 338, *et seq.* This case can be disposed of upon the question of the sufficiency of the indictment raised by the motion in arrest of judgment and, therefore, we refrain from expressing any opinion on the constitutionality of the statute here considered.

An indictment being *per se* part of the record, the question of its sufficiency may be raised by a motion in arrest of judgment. 3 Wharton's Criminal Procedure, 10th ed., Section 1692; Burks' Pleading and Practice, third ed., Section 300. We bear in mind the provisions of Code, 62-2-10, 11. Upon examination of those statutes it is clear that although the effect and scope of judgment have been limited thereby, nevertheless such motion is still effective to raise the question whether an indictment actually charges any crime.

Omitting the formal parts, the indictment herein charges that defendant "* * * on the 9th day of May, 1944, in the said County of Greenbrier, did unlawfully and without authority enter the election room of Voting Precinct Number 59 in Meadow Bluff District, Greenbrier County, West Virginia, while the May, 1944, Primary Election was being held and conducted therein as provided for by law, on the date aforesaid, he, the said Gearls R. Garner not being then and there upon a lawful errand and not being then and there in the election room aforesaid for a proper purpose * * *."

The offense described by the statute consists of entry into a voting room wherein an election is being held, by an unauthorized person, except upon a lawful errand and for a proper purpose. The words "except upon a lawful errand and for a proper purpose" are included in the enacting clause of the statute, and are part of the description of the offense denounced therein. Clearly, if any person enters a voting room while an election is being held upon a lawful errand and for a proper purpose, there would be no violation of the statute. The added

words created an exception within the enacting clause of the statute, and an indictment thereunder must negative the lawfulness of the errand and the propriety of the purpose on which, and for which such entry was made. *State v. Weir*, 71 W. Va. 93, 76 S. E. 138; *State v. Welch*, 69 W. Va. 547, 548, 72 S. E. 649; 1 Wharton's Criminal Procedure, Tenth Edition, Section 289. See 2 Lewis' Sutherland Statutory Construction, Second Edition, page 671. The indictment by alleging that defendant was not on a lawful errand and was not there for a proper purpose, attempts to negative the exception above noted. But those allegations are conclusions rather than facts. As was stated in the opinion in *State v. Wohlmouth,* 78 W. Va. 404, 407, 89 S. E. 7: "* * * facts, not conclusions of law, must be stated."

The errand and purpose motivating the defendant's entry into the election room are not specifically alleged. It is a general rule that an allegation in the words of the statute under which an indictment is drawn is sufficient. But there is an exception to that rule equally as well established. Where, as here, a statute describes the offense in general terms, an indictment following the words of the statute is not sufficient. The indictment must amplify the statutory description of the offense by specifically alleging commission of the act or acts constituting the offense charged. *State v. Simmons,* 99 W. Va. 702, 129 S. E. 757; *State v. Lynch,* 84 W. Va. 437, 100 S. E. 284.

One object of an indictment is to describe the crime charged so that the accused shall be "fully and plainly informed of the character and cause of the accusation." Article III, Section 14, Constitution of West Virginia. In the instant case the accused was not informed by the indictment as to facts whereby his errand was not lawful, nor was he advised in what respect his purpose was not proper. The indictment should have specifically alleged facts, which, if proved, would establish that the errand on which, and the purpose for which, defendant

entered the election room were not lawful and proper. Not including such allegations the indictment is insufficient, and alleges no offense.

Accordingly the judgment of the Circuit Court of Greenbrier County is reversed, and this case is remanded.

*Reversed and Remanded.*

Fox, JUDGE, dissenting:

I cannot agree with the holding of the majority that the words "except upon a lawful errand and for a proper purpose" are a part of the description of the offense intended to be prohibited by Code, 3-7-12, and the majority opinion, as I interpret it, is wholly based upon that construction of the statute.

The Legislature of 1891, by an act entitled "AN ACT amending and re-enacting chapter three of the code of West Virginia, concerning elections by the people", provided: "If any person not herein authorized so to do, shall enter or attempt to enter the election ward, or shall remain within sixty feet of the polling place, contrary to the provisions hereinbefore made, he shall be guilty of a misdemeanor, and, on conviction thereof, shall. be fined not less than one hundred dollars nor more than five hundred dollars, and confined in the county jail not less than thirty days." In Barnes' Code, 1923, Chapter 3, Section 81, liberties are taken with the legislative enactment aforesaid, and it is made to read: "If any person not herein authorized so to do, shall enter or attempt to enter the election room, or shall remain within sixty feet of the polling place, contrary to the provisions hereinbefore made, he shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars, and confined in the county jail not less than thirty days."

It would seem from these quotations that, prior to the Code revision of 1931, the mere presence of an unauthorized person in an election ward or room, or within sixty

feet of the polling place, constituted an offense. We tread on dangerous ground when we attempt to interpret the intent and purpose of the Legislature, but we may assume that the revisers of the Code of 1931, and the Legislature which adopted that revision, had in mind the fact that the statute, as it had theretofore existed, was too rigid, for the reason that in practice it might sometimes be necessary for persons other than election officers and voters to enter the election grounds and the election room. To illustrate, an election officer might become ill and require the attention of a physician, or require assistance in being removed from the election room; turmoil and disorder might require the presence of an officer of the law to restore order; food and drink for election officials might be required; and many other situations might arise wherein it would be entirely proper for persons other than election officials to be present. For this reason, I assume, the statute was changed to read as follows: "If any person, not herein authorized so to do, shall enter or attempt to enter the election room, except upon a lawful errand and for a proper purpose, or shall remain within sixty feet of the polling place, contrary to the provisions of this chapter, he shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not more than five hundred dollars, or confined in the county jail for not more than thirty days."

In my opinion, the clear purpose of the Legislature in its enactment of 1891, and in the 1931 revision of the Code, was to protect election rooms and polling places by prohibiting the presence of any and all persons not authorized to be there present. Necessarily, voters were excluded from the terms of the statutes, because their right to be present and to vote could not thus be interfered with. I think the insertion of the words "except upon a lawful errand and for a proper purpose" in the 1931 Code was merely to provide an excuse which could be employed by unauthorized persons who had gone to the election room or the election grounds upon a lawful errand or for a proper purpose. I do not think these

words were used as a part of the description of the offense intended to be prohibited.

The indictment in this case is held to be insufficient in that it does not allege wherein the defendant was present in the election room on the occasion here under consideration not upon a lawful errand and not for a proper purpose. The indictment charges that defendant "did unlawfully and without authority enter the election room of Voting Precinct No. 59 in Meadow Bluff District, Greenbrier County, West Virginia, while the May, 1944, Primary Election was being held and conducted therein as provided by law, on the date aforsaid, he, the said Gearls R. Garner not being then and there upon a lawful errand and not being then and there in the election room aforesaid for a proper purpose, against the peace and dignity of the State." It charged defendant with being in the election room unlawfully, and also charged that he was not then and there upon a lawful errand or for a proper purpose. Under the 1931 revision of the statute, it was, no doubt, necessary to negative the fact that he was there on a lawful errand and for a proper purpose. He was plainly advised of the charge against him, and substantially in the language of the statute. That, I think, was all that was required. It is scarcely conceivable that the Legislature intended to impose upon the State the burden of alleging facts which, in many instances, would be impossible to establish. Of course, in an instance where a person entered an election room and engaged in disorderly conduct, or interfered with the conduct of the election, his acts and conduct would not constitute a lawful errand or a proper purpose; but in many instances persons might enter an election room, remain quiet, doing nothing to interfere with the conduct of the election, and their purpose in so doing would rest entirely in the minds of the offenders. In such case it would be difficult to frame a charge against them, and certainly impossible to establish that they had committed any offense. I am, therefore, of the opinion that the indictment in this case was sufficient.

If the indictment should be held good, the question then arises on whom rests the burden of establishing that a person charged with presence in an election room, under the statute, was there upon an unlawful errand or for an improper purpose. In my opinion, the presence of a person in an election room or upon the election grounds within sixty feet of the polling place is the offense sought to be prohibited, and the burden of establishing that he was there upon a lawful errand, or for a proper purpose, rests upon the accused. I take this position on the ground that it is entirely within the power of the accused to furnish an excuse for his unauthorized presence, and in many situations, it would be beyond the power of the State to establish that he was there on an unlawful errand or for an improper purpose. In the final analysis, whether his excuse is to be accepted rests upon the jury before whom his case is tried, subject to the control of the trial court and this Court.

I am concerned as to the effect of the decision of the majority upon the conduct of future elections in this State. As stated above, in many instances, it would not be difficult for the State to establish the presence of a person at a polling place or upon the election grounds as improper; but in many other instances it would be impossible to establish that fact. Therefore, when we establish a rule under which it would be possible for political organizations to place men in every election precinct in this State, who, during their presence therein, merely stand by and observe the conduct of the election, and where the State is placed under the necessity of proving the impossible, namely, that they were there for an improper purpose or upon an unlawful errand, I fear the whole purpose and intent of the statute is nullified. The construction of the statute for which I contend would impose no hardship or danger on any person who might be called to the election room for a legitimate purpose.

In this case defendant attempted to excuse his pres-

ence in the election room. Presumably he thought that, under the statute, it was incumbent on him to do so. He was there on three occasions: first, in the morning before the polls were opened, and, second, when he went there for the purpose of voting. His presence on both of these occasions was not an offense. The case for conviction rests upon his presence there in the evening while the election officials were tabulating the vote. He offers no lawful excuse for being there on that occasion, and the jury so found. In the circumstances, the penalty imposed may seem severe, but this Court is without power to control the discretion of the trial court in that respect.

I would affirm the judgment.

I am authorized to state that Judge Kenna concurs in this memorandum.